# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

|  |  |
|---|---|
| In re: | Chapter 7 |
|  | Case No. 08-31056-HJB |
| RONEY HARRIS, |  |
| Debtor |  |
| RONEY HARRIS, | Adversary Proceeding |
|  | No. 09-3052 |
| Plaintiff |  |
| v. |  |
| HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF MAY 1, 2006, FREMONT HOME LOAN TRUST 2006-A; FREMONT INVESTMENT & LOAN; LITTON LOAN SERVICING LP; USA FINANCIAL LLC; and JOHN DOES 1-150, |  |
| Defendants |  |

## MEMORANDUM OF DECISION

This matter is before the Court after remand from the United States District Court

for the District of Massachusetts (the "District Court") (Ponsor, D.J.),[1] directing this Court

to reconsider an order granting relief from the automatic stay with respect to a mortgage

on certain real property owned by the debtor and plaintiff Roney Harris ("the Debtor")

---

[1] See Harris v. HSBC Bank USA, 2010 WL 3860603 (D. Mass. Sept. 28, 2010).

(the "Remand Order").  Specifically, the District Court determined that this Court erred in not fully considering an argument timely raised by the Debtor, to the effect that the purported mortgagee lacked standing to bring the motion.  However, since entry of the Remand Order, the circumstances have changed.  The underlying motion has been withdrawn by the purported mortgagee and, accordingly, the underlying contest is no longer before the Court.  But the Debtor has now moved the Court to vacate the dismissal of one, or both, of two related adversary proceedings based upon the District Court's remand.  Because the District Court did not remand for that purpose and for the additional reasons discussed herein, including that this Court has no jurisdiction to reach the questions raised in those adversary proceedings absent an impact upon the bankruptcy estate, that motion must be DENIED.

I.    FACTS AND TRAVEL OF THE CASE

The Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code")[2] on July 21, 2008.  On the schedules and statements filed with the petition,[3] the Debtor listed an ownership interest in a single family house in Glastonbury, Connecticut (the "Property") and asserted its value as $550,000.  He also listed two mortgages against the Property: a first mortgage held by "Litton Loan Servicing, LP" ("Litton"), securing a $505,964 debt, and a second mortgage held by Litton, securing a $125,024 debt – a total of $630,988 in claims secured by

---

[2] See 11 U.S.C. § 101 et seq.  All references to statutory sections are to the Bankruptcy Code unless otherwise specified.

[3] See In re Harris, 08-31056, ECF No. 1.

mortgages on the Property.[4]   The Debtor also indicated that a foreclosure suit related to the Property, filed by Fremont Mortgage Corp. ("Fremont") against the Debtor, was pending in the Superior Court in Hartford, Connecticut at the time the petition was filed.

On August 26, 2008, the Debtor filed amended schedules,[5] deleting Litton from Schedule D (secured creditors) and adding Litton, Fremont, and Mortgage Electronic Registration Systems (MERS) to Schedule F (unsecured creditors), describing their claims as arising from "a disputed loan for the purchase of a single family house in Glastonbury, CT."

The Debtor received his Chapter 7 discharge on December 30, 2008,[6] although the case remained open while the Chapter 7 Trustee (the "Trustee") attempted to administer possible assets of the bankruptcy estate.   Apparently unsuccessful in that effort, the Trustee ultimately filed a no asset case report on January 10, 2011.[7]   Thus, apart from the matter now before the Court, this case is ready to be closed.

On February 2, 2009, HSBC Bank USA, National Association, as trustee under the Pooling and Servicing Agreement dated as of May 1, 2006, Fremont Home Loan Trust 2006-A ("HSBC"), moved for relief from the automatic stay imposed by § 362(a),

---

[4] Litton Loan Services is listed as the "creditor," but the Debtor also noted on Schedule D that the "original mortgagor [sic]" was "Fremont Investment and Loan."   The Court assumes, without deciding, that Fremont in some form had an interest in the notes secured by the mortgages, while Litton was servicing them.

[5] In re Harris, 08-31056, ECF No. 29.

[6] In re Harris, 08-31056, ECF No. 63 (Dec. 30, 2009).

[7] A "no asset case report" does not mean that the debtor has no assets; rather that, in the opinion of the Chapter 7 trustee, the debtor has no assets that can be liquidated to produce a meaningful dividend for unsecured creditors.   It is not a document which has legal significance and not a document which abandons any asset.   It is simply a signal to the Court that, absent a complaint objecting to the debtor's discharge, the Chapter 7 trustee has no objection to the case being closed.

seeking leave to continue its efforts in the Connecticut state court to foreclose on the Property (the "First Motion for Relief from Stay").[8]  In the motion, HSBC alleged that it was the current holder, by way of assignment, of a note for $508,000 (the "Note") and a mortgage against the Property to secure payment of that Note (the "Mortgage").  HSBC stated that the Debtor had not made a payment on the Note in 19 months, and therefore asserted that grounds for relief from stay existed under § 362(d)(1) (as HSBC's security interest was not adequately protected) and under § 362(d)(2) (as there was no equity in the Property and the Debtor was not attempting a reorganization).

The Debtor timely objected to the First Motion for Relief from Stay[9] and, on the same date (February 9, 2009), filed an adversary proceeding against HSBC and 25 unnamed defendants (the "First Adversary Proceeding").[10]  In the objection filed in the Debtor's main bankruptcy case (the "Main Case"), the Debtor noted that he had filed an adversary proceeding contesting HSBC's claim, contended that material issues of fact were in dispute, and argued that the creditor had engaged in "fraudulent activities." Although a hearing on the First Motion for Relief from Stay was scheduled, that hearing was continued generally at the request of the parties, pending a resolution of the First Adversary Proceeding.[11]

---

[8] In re Harris, 08-31056, ECF No. 70.

[9] In re Harris, 08-31056, ECF No. 72 (Feb. 9, 2009).

[10] Harris v. HSBC, et al., Adversary Proceeding No. 09-3008.

[11] See In re Harris, 08-31056, ECF Nos. 87, 88.  Although resolution of the First Motion for Relief from Stay awaited the outcome of the First Adversary Proceeding, it was not consolidated with that adversary proceeding.

Through the complaint filed in the First Adversary Proceeding,[12] the Debtor sought damages and various other remedies for the defendant's alleged wrongful conduct. Among his many requests for relief, including demands for actual and punitive damages, the Debtor sought a declaratory judgment that the Mortgage lien had been discharged. Despite the Debtor's various factual and legal assertions, including citations to a variety of state and federal statutes and procedural rules, the complaint failed to provide coherent facts sufficient to support the Debtor's allegations of wrongdoing and failed to articulate cognizable legal theories in support of many of his requests for various remedies. HSBC moved to dismiss the complaint.[13]

At the hearing on the motion to dismiss, held on April 23, 2009, the Court agreed with HSBC that only two claims for relief were identifiable in the complaint: (1) a purported claim under the "Mass RICO statute" and (2) a claim under the Fair Debt Collection Practices Act (FDCPA). During argument, the Debtor complained that HSBC had neglected to address additional claims contained in the complaint, but the Court could find no others and the Debtor failed to specifically identify any of those additional claims.

Based on the claims for relief that it could identify – those brought under RICO and the FDCPA – the Court agreed with HSBC that dismissal of the First Adversary Proceeding was required. As to the RICO claim, the Court noted that there is no Massachusetts RICO statute, and none of the allegations in the complaint were sufficient to state a claim under the federal RICO law. And as to the claim under the

---

[12] Harris v. HSBC, 09-3008, ECF No. 1.

[13] See Harris v. HSBC, 09-3008, ECF No. 5 (March 10, 2009).

FDCPA, the Court ruled that the claim was barred by the one-year statute of limitations and that HSBC was not a "debt collector" within the meaning of the statute. Accordingly, on April 23, 2009, the Court dismissed the First Adversary Proceeding (the "First Dismissal Order").

On April 29, 2009, the Debtor filed a motion to reconsider the First Dismissal Order (the "First Motion to Reconsider").[14]  In his motion, the Debtor raised several issues, some contained in the original complaint and many extraneous to it.  HSBC filed its objection.[15]  But while the Court was considering the issues raised in the First Motion to Reconsider, HSBC withdrew its First Motion for Relief from Stay,[16] and then filed a second motion for relief from the automatic stay in the Main Case on August 28, 2009 (the "Second Motion for Relief from Stay").[17]  The Second Motion for Relief from Stay was essentially identical to the First, with the notable exception that HSBC did not allege in its second motion that it was the holder of the Note.  The Debtor filed an objection to the Second Motion for Relief from Stay on August 31, 2009,[18] noting that the First Adversary Proceeding was still pending and arguing again that HSBC had no standing to declare a default of the Note and the Mortgage or to foreclose upon the Property.

---

[14] Harris v. HSBC, 09-3008, ECF No. 27.

[15] See Harris v. HSBC, 09-3008, ECF No. 31 (May 8, 2009).

[16] See In re Harris, 08-31056, ECF No. 97 (August 25, 2009).

[17] In re Harris, 08-31056, ECF No. 99.

[18] In re Harris, 08-31056, ECF No. 100.

In a memorandum and order dated October 15, 2009 (the "October 15 Order"),[19] the Court denied reconsideration of the First Dismissal Order, noting again the substantive failings with the RICO claim and the untimeliness of the FDCPA claim (although the Court did indicate some doubt as to whether it had correctly determined that HSBC was not a "debt collector" under the statute).  The Court also now managed to identify a possible third claim brought for damages under the Truth in Lending Act, but noted that such claim was also barred by a statute of limitations.  As to any other or remaining allegations contained in the complaint, the Court held that the Debtor had failed to state any cognizable claims for relief.

In its memorandum, the Court also addressed the Debtor's allegations that HSBC did not have standing to foreclose on the Property or to prosecute its First Motion for Relief from Stay.  The Court noted, correctly, that HSBC had withdrawn its First Motion for Relief from Stay in the Debtor's Main Case; however, the Court admittedly overlooked the fact that, in the interim, the Second Motion for Relief from Stay had been filed in the Main Case and the Debtor had timely filed an objection to that motion. Accordingly, without appreciating the extant Second Motion for Relief from Stay or the objection thereto in the Main Case, the Court held that it no longer had jurisdiction to determine the issues raised in the First Adversary Proceeding, because there was no longer an underlying dispute that implicated property of the estate.  As this case was filed and remained under Chapter 7, the identification of the true holder of the Note and Mortgage had no impact on the bankruptcy estate; there was no equity in the Property for the benefit of unsecured creditors and no dividend for unsecured creditors that might

---

[19] Harris v. HSBC, 09-3008, ECF Nos. 34, 35.

be diluted by a claim filed by the purported mortgagee.  See In re G.S.F. Corp., 938

F.2d 1467, 1475 (1st Cir. 1991) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d

Cir. 1984)) ("related to proceedings" are those where the outcome conceivably could

have some effect on the bankruptcy estate). [20]

And the Court further explained that, if there *were* affirmative claims available to

the Debtor against the purported mortgagee, only the Chapter 7 Trustee had standing to

prosecute them – prosecution that the Trustee has apparently judged imprudent.

Accordingly, the mortgage would pass through the estate unimpaired and the claims by

the Debtor against the mortgagee would be abandoned to the Debtor as a matter of law,

without prejudice to the right of the Debtor to assert those claims or challenge the

validity of the mortgage or the identification of the claimed holder of the mortgage in a

nonbankruptcy forum.  See, e.g., VonGrabe v. Mecs (In re VonGrabe), 332 B.R. 40, 44

(Bankr. MD. Fla. 2005); Sherrell v. Fleet Bank of N.Y. (In re Sherrell), 205 B.R. 20, 22

(N.D.N.Y. 1997).

No appeal from the October 15 Order denying reconsideration of the dismissal of

the First Adversary Proceeding was taken by the October 29, 2009 deadline for filing a

notice of appeal; thus, the October 15 Order and the First Dismissal Order became final.

However, on October 26, 2009, the Debtor filed a new adversary proceeding against

HSBC, this time naming MERS, Fremont, Litton, USA Financial LLC, and 150 unnamed

---

[20] Of course, the Court's jurisdiction over the dispute between the Debtor and HSBC might have
been different had the Debtor filed under Chapter 13 – since the validity of the mortgage would
have been implicated in the bankruptcy estate's postpetition rights and the Debtor would have
remained in possession of bankruptcy estate property, see 11 U.S.C. § 1306(b) – but the Debtor
chose not to do so.

individuals as additional defendants ("the Second Adversary Proceeding").[21]   In the

complaint filed in the Second Adversary Proceeding,[22] the Debtor rehashed many of the

allegations and arguments made in the First Adversary Proceeding, though

recharacterizing his claims as claims for "Fraud," "Abuse of Process," "Quiet Title," and

"TRO, Preliminary Injunction, and Permanent Injunction."   The Debtor also raised new

arguments and sought new remedies in addition to those outlined in the First Adversary

Proceeding complaint.

On October 29, 2009, three days after the Debtor filed the Second Adversary

Proceeding, the Court held a hearing on the Second Motion for Relief from Stay and the

Debtor's objection thereto.   At that hearing, the Debtor specifically stated that the

Second Adversary Proceeding was filed in response to the Second Motion for Relief

from Stay and reiterated his argument that HSBC did not have standing to prosecute

that motion.   This Court, failing to appreciate that it had declined to decide the standing

issues when it dismissed the First Adversary Proceeding because it believed that there

was then no extant motion for relief from the automatic stay, held that the finality of the

dismissal of the First Adversary Proceeding precluded the Debtor from challenging the

Second Motion from Relief from Stay, since the dismissal was *res judicata* as to all

issues between the Debtor and HSBC that were (or could have been) raised in the First

Adversary Proceeding.   Thus, the Court found that it was compelled to grant the Second

Motion for Relief from Stay, which it did by order dated October 29, 2009 entered in the

---

[21] <u>Harris v. HSBC, et al.</u>, Adversary Proceeding No. 09-3052.

[22] <u>Harris v. HSBC</u>, 09-3052, ECF No. 1.

9

Main Case, where the Second Motion for Relief from Stay had been filed (the "Stay Relief Order").[23]

On November 3, 2009, the Debtor filed a document *in the Second Adversary Proceeding* entitled "Motion to Reconsider" (the "Second Motion to Reconsider"),[24] asking the Court to reconsider its "action to dismiss Plaintiff's Adversarial Proceedings, and its granting of Defendant's Motion to Lift Stay."  In his motion, the Debtor argued that (1) the Court had failed to rule on the issue of whether HSBC was the "real party in interest;" (2) the defendants did not hold the Note and Mortgage; and (3) any debt owed to the defendants was discharged as entirely unsecured, since the Debtor had listed the claims as unsecured in his amended Schedule F and the defendants had never objected to that characterization.[25]

Because the Second Motion to Reconsider the dismissal of the First Adversary Proceeding was not filed in the First Adversary Proceeding, but in the Second Adversary Proceeding, and did not properly identify the adversary proceeding to which it applied, and because the request for reconsideration of the Stay Relief Order was not filed in the Main Case, the Court was led to believe that the Second Motion to Reconsider was merely an attempt to evade the now-expired deadline for filing an appeal of the dismissal of the First Adversary Proceeding (not a bad assumption, even

---

[23] See In re Harris, 08-31056, ECF No. 105.

[24] Harris v. HSBC, 09-3052, ECF No. 4.

[25] Listing a creditor on Schedule F (the list of unsecured creditors) does not render that creditor's validly-secured debt unsecured, even if the creditor never objects to that classification. The schedules filed by the Debtor are designed to assist the Chapter 7 trustee and creditors in determining the state of the Debtor's financial affairs, and those schedules cannot, of themselves, extinguish a secured claim improperly characterized therein.

in retrospect).   Accordingly, the Court denied the Second Motion to Reconsider filed in the Second Adversary Proceeding by its order of November 9, 2009 (the "November 9 Order"), noting that: "[t]he Court has not dismissed *this* adversary proceeding" (emphasis supplied).[26]   On November 19, 2009, the Debtor timely filed a notice of appeal of the November 9 Order.[27]

The Debtor also requested a stay pending appeal,[28] which this Court denied on December 11, 2009.[29]   In denying the motion to stay pending appeal, the Court held that there was no likelihood of success on appeal since (1) if the Debtor was attempting to appeal the dismissal of the *First* Adversary Proceeding, the appeal was untimely; (2) if the Debtor was attempting to appeal the dismissal of the *Second* Adversary Proceeding, the appeal was frivolous, as that adversary proceeding had not been dismissed; and (3) the notice of appeal referred to granting relief from stay, which was was ordered on October 29 and not on November 9.[30]

While the appeal of the November 9 Order was pending before the District Court, the defendants filed a motion to dismiss the Second Adversary Proceeding,[31] arguing that the claims were barred by *res judicata* and had no substantive merit. The Debtor

---

[26] Harris v. HSBC, 09-3052, ECF No. 5.

[27] Harris v. HSBC, 09-3052, ECF No. 11.

[28] Harris v. HSBC, 09-3052, ECF No. 10 (Nov. 19, 2009).

[29] Harris v. HSBC, 09-3052, ECF No. 22.

[30]   Indeed, the November 19 appeal would have been untimely with respect to the October 29 Stay Relief Order.

[31] Harris v. HSBC, 09-3052, ECF No. 21 (Dec. 8, 2009).

objected to dismissal,[32] arguing that *res judicata* did not bar many of the claims asserted in the Second Adversary Proceeding because the Court had never ruled on them. In his objection, the Debtor again pressed his argument that the defendants did not hold the Note and Mortgage and urged the Court to find the defendants in contempt for attempting to collect on a discharged debt.

In a written order dated March 12, 2010,[33] the Court ruled that the claims raised in the Second Adversary Proceeding were barred by the doctrine of *res judicata*, as they had been finally determined when the Court granted the motion to dismiss the First Adversary Proceeding, which dismissal had not been timely appealed.[34] On March 17, 2010, the Debtor filed a motion to reconsider the Court's dismissal of the Second Adversary Proceeding.[35] That motion was denied by order dated March 29, 2010.[36] No appeal of the dismissal order or the order denying reconsideration was filed. Accordingly, the dismissal of the Second Adversary Proceeding is final.

On September 28, 2010, the District Court issued its Memorandum and Order regarding the Debtor's appeal of the November 9 Order. See Harris v. HSBC Bank, N.A., 2010 WL 3860603 (D. Mass. Sept. 28, 2010). After noting the procedural

---

[32] See Harris v. HSBC, 09-3052, ECF No. 24 (Dec. 15, 2009).

[33] Harris v. HSBC, 09-3052, ECF No. 31.

[34] The Court also specifically addressed the pending appeal of the November 9 Order, finding that dismissal of the Second Adversary Proceeding was not affected by, nor would it affect, that appeal, since the November 9 Order, at most, denied a request to reconsider an order entered in an entirely separate adversary proceeding. Although the Debtor currently argues otherwise, the Court did *not* grant the motion to dismiss the Second Adversary Proceeding because it believed the Debtor's appeal would not succeed, but because a ruling in favor of the Debtor on appeal would impact only the *First* Adversary Proceeding.

[35] Harris v. HSBC, 09-3052, ECF No. 36.

[36] Harris v. HSBC, 09-3052, ECF No. 37.

confusion caused by the Debtor in this case, <u>id.</u> at *1, 4, 5, the District Court found that this Court had in fact erred in failing to connect the Debtor's request for reconsideration filed in the Second Adversary Proceeding to the Stay Relief Order filed in the Main Case, <u>id.</u> at *4, 5.    The District Court held that, although it was filed in the Second Adversary Proceeding, the Debtor's Second Motion for Reconsideration was actually an attempt to seek reconsideration of the October 29 order in the *Main Case* granting the Second Motion for Relief from Stay.    <u>Id.</u> at *3, 4. Thus, the District Court stated that it would "treat th[e] appeal as a timely challenge to an order denying reconsideration of *an order to lift the automatic bankruptcy stay.*"    <u>Id.</u> at * 4 (emphasis supplied).    The District Court went on to note that since this Court had  declined to reach the issue of standing when it dismissed the First Adversary Proceeding, the Debtor was *not* precluded from attacking HSBC's standing with respect to the Second Motion for Relief from Stay.    <u>Id.</u> at *4.    Furthermore, the District Court, noting that HSBC had not yet adequately demonstrated its standing to prosecute the Second Motion for Relief from Stay, reversed this Court's denial of reconsideration of that issue and remanded for further consideration.    <u>Id.</u> at *5, 6.

Following the District Court's order remanding the matter to this Court, the Debtor filed a motion requesting entry of default against the defendants for their failure to plead, presumably for their failure to file an answer or other pleading in the Second Adversary Proceeding.[37]    At a status conference and hearing on the request for default held on April 28, 2011, the Court denied the Debtor's request to default the defendants on

---

[37] <u>Harris v. HSBC</u>, 09-3052, ECF No. 40.

account of any pleading obligation related to the Second Adversary Proceeding,[38] because the District Court had remanded the matter only so that this Court could determine standing with respect to the Second Motion for Relief from Stay.  At the conclusion of the hearing, HSBC's counsel requested a continuance of the status conference in order to determine whether HSBC wanted to proceed with the Second Motion for Relief from Stay or to withdraw the motion.

On May 6, 2011, HSBC filed a withdrawal of its Second Motion for Relief from Stay.[39]  The Debtor objected to this withdrawal, arguing that the "defendants" (presumably the movant with regard to the Second Motion for Relief from Stay) had perpetrated a fraud on the Court and should not be allowed to withdraw the motion, but should instead be sanctioned.[40]  In that objection, the Debtor also asked the Court to revisit the dismissal of the *Second* Adversary Proceeding, since, according to the Debtor, the Court based its dismissal of the Second Adversary Proceeding on its belief that the appeal of the November 9 Order would not succeed.  And on May 16, 2011, the Debtor filed a motion for summary judgment in the Second Adversary Proceeding.[41]

On May 19, 2011, the Court conducted a continued status conference.  At that hearing, the Court ruled that, because the underlying Second Motion for Relief from Stay had been withdrawn, the Court no longer had jurisdiction to decide any remaining contests between the Debtor and HSBC or others with respect to the Note or Mortgage.

---

[38] Harris v. HSBC, 09-3052, ECF No. 46.

[39] In re Harris, 08-31056, ECF No. 109.

[40] See In re Harris, 08-31056, ECF No. 110.

[41] Harris v. HSBC, 09-3052, ECF No. 53.

However, because the parties and the District Court had spent considerable time on this case, and in order to show proper respect for the District Court's remand of this matter for further consideration, the Court indicated that it would be issuing a written explanation to support its stated conclusions.  Later the same day, the Court received from the Debtor a "Motion to Vacate Judgment" filed in the Second Adversary Proceeding.[42]  Accordingly, this Memorandum also details the reasons why that motion will be denied.

II.    DISCUSSION

   **A. This Court's Subject Matter Jurisdiction**

This Court's jurisdiction is not unlimited.   As explained in City of Springfield v. Lan Tamers, Inc. (In re Lan Tamers, Inc.):

> The limits of this Court's jurisdiction are set forth in 28 U.S.C. § 1334(b) (2002).  This Court may hear disputes which "arise under," "arise in" or are "related to" the Bankruptcy Code.  The First Circuit Court of Appeals has recently distinguished these terms as follows:
>
>> "[A]rising under" proceedings are (at least) those cases in which the cause of action is created by title 11 . . . .  "Arising in" proceedings generally are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of bankruptcy.  [Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir.1987)].  "[R]elated to" proceedings [are] proceedings which "*potentially have some effect on the bankruptcy estate*, such as altering the debtor's rights, liabilities, options, or freedom of action, or *otherwise have an impact upon the handling and administration of the bankruptcy estate*."  In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir.1991) (quoting Smith v Commercial Banking Corp. (In re Smith), 866 F.2d 576, 580 (3d Cir.1989)).

---

[42] Harris v. HSBC, 09-3052, ECF No. 54.

281 B.R. 782, 797-98 (Bankr. D. Mass. 2002), aff'd, 329 F.3d 204 (1st Cir. 2003), cert.

denied, 540 U.S. 1047 (2003) (quoting New England Power Marine, Inc. v. Town of

Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 68 (1st Cir.

2002) (emphasis supplied)); see also 28 U.S.C. § 1334(b) (2006). [43]

### B. The Note and Mortgage Dispute: Does it Affect the Bankruptcy Estate?

The determination requested by the Debtor – namely, that HSBC is not the

holder of the Note and Mortgage and therefore has no standing to prosecute various

rights anent the Property – does not "arise under" or "arise in" the Bankruptcy Code,

inasmuch as the rights asserted by both parties would exist outside of Title 11.

Accordingly, the remaining inquiry is whether the contest identified by the Debtor falls

within the parameters of this Court's "related to jurisdiction"; that is, would a

determination of the Debtor's dispute with HSBC affect the bankruptcy estate?

There are several ways in which a determination as to the validity of a mortgage

debt or the identification of its owner might impact a bankruptcy estate.  If a debtor files

under Chapter 11 or 13, all of his or her property remains property of the bankruptcy

estate throughout the case, and a determination as to the validity of the mortgage and

---

[43] 28 U.S.C. § 1334(b) provides as follows:

> Except as provided in subsection (e)(2), and notwithstanding any Act of
> Congress that confers exclusive jurisdiction on a court or courts other than the
> district courts, the district courts shall have original but not exclusive jurisdiction
> of all civil proceedings arising under title 11, or arising in or related to cases
> under title 11.

28 U.S.C. § 157, in turn, provides that the district courts may refer "any or all cases under [the
Bankruptcy Code] and any or all proceedings arising under [the Bankruptcy Code] or arising in
or related to a case under [the Bankruptcy Code] . . . to the bankruptcy judges for the district."
The District Court for the District of Massachusetts has done so through its Local Rule 201.  See
LR, D. Mass. 201.

its true owner is integral to addressing how the estate will be administered, how much will be paid to unsecured creditors, and to whom the mortgage debt will be paid.

In cases filed under Chapter 7, the validity of an asserted mortgage may also impact the administration of the bankruptcy estate. For instance, if voiding or reducing the asserted security interest leaves nonexempt equity available for distribution to unsecured creditors the bankruptcy estate is clearly impacted. Similarly, if the debtor has affirmative prepetition claims against the mortgagee, those claims vest in the Chapter 7 trustee, who may pursue recovery on the claims for the benefit of unsecured creditors.[44] The bankruptcy court's jurisdiction may also be invoked by a purported mortgagee filing a proof of claim which would entitle that creditor, in the event that the claim is undersecured, to an aliquot share of the dividend payable to unsecured creditors. And if the bankruptcy court is asked by the purported mortgagee for relief from the automatic stay under § 362(a) for leave to initiate or continue a state court proceeding incident to foreclosure, the court has jurisdiction to address the questions arising from that request (but only to determine whether the movant has a colorable claim, see Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 33-34 (1st Cir. 1994)).

None of those circumstances exist here. The Debtor has brought this case under Chapter 7.[45] He has exempted the Property. The Trustee has chosen not to pursue the claims asserted by the Debtor. [46] The purported mortgagee has not filed a proof of

---

[44] See DiMaio Family Pizza & Luncheonette, Inc. v. The Charter Oak Fire Ins. Co., 448 F.3d 460, 463 (1st Cir. 2006).

[45] The Debtor has remained steadfast in his desire to remain in Chapter 7. That is a choice that he has freely made, but it has had a jurisdictional cost.

[46] The claims against HSBC (and the other defendants in the adversary proceedings) are all prepetition claims that belong to the bankruptcy estate. See DiMaio, 448 F.3d at 463. Those

claim (and the deadline for filing one has passed).  Even if a proof of claim had been

filed, its validity would be irrelevant here because  no dividend will be paid to unsecured

creditors.  And now the creditor has withdrawn its motion for relief from the automatic

stay.

There no longer remains any foothold in which to fasten jurisdiction over the

remaining disputes regarding the Note or the Mortgage.

---

claims have not been formally abandoned by the Trustee, and it remains the Trustee, and not
the Debtor, who has standing to prosecute those claims.  Id.; see also Robert v. Household Fin.
Corp. II (In re Robert), 432 B.R. 464, 471 & n.10 (Bankr. D. Mass. 2010) (only Chapter 7 trustee
has standing to bring debtor's prepetition claims against mortgagee); St. Onge v. Zuccola (In re
St. Onge), 317 B.R. 39, 44-45 (Bankr. D.N.H. 2004) (TILA and contract claims against
mortgagee were property of the Chapter 7 bankruptcy estate and debtors did not have standing
to pursue them).  And even if the Trustee were to abandon the claims during the pendency of
the case to allow the Debtor to prosecute them, *this* Court still would not have jurisdiction to
determine those claims, as they would no longer relate to or have any impact on this bankruptcy
case.  As the Bankruptcy Court for the Northern District of Georgia has explained, once claims
(in that case, also against a lender) are abandoned:

> those claims belong only to Debtor.  Hence, the outcome of her proposed lawsuit
> could not have any "[conceivable] effect on the estate being administered in
> bankruptcy."  This is because none of the recovery Debtor hopes to obtain would
> belong to her bankruptcy estate – the claim and its proceeds would be her
> property to which creditors and the Trustee would have no rights. . . . For that
> reason, the proposed lawsuit would not be related to this bankruptcy case within
> the meaning of 28 U.S.C. § 1334(b), thereby depriving this Court of jurisdiction to
> hear it.

In re Sheppard, 2008 WL 7872864, *2 (Bankr. N.D. Ga. May 30, 2008)

When the case is closed, these claims will be revested in the Debtor.  See § 554(c)
("Unless the court orders otherwise, any property scheduled under section 521(1) of this title not
otherwise administered at the time of the closing of the case is abandoned to the debtor and
administered for the purposes of section 350 of this title."); see also VonGrabe, 332 B.R. at 44
(because discharge had issued and debtor's prepetition claims were abandoned by the Chapter
7 trustee, the debtor was "revested with the right to pursue his assorted claims against the
various defendants in a more appropriate forum"); Sherrell, 205 B.R. at 22 (once debtors'
prepetition legal claims against mortgagee were abandoned and reverted to the debtors, the
debtors were free to pursue the claims outside the bankruptcy forum).

## C. The Second Motion for Relief from Stay

The District Court specifically remanded the matter to this Court to consider whether HSBC had standing to prosecute the Second Motion for Relief from Stay. This Court was fully prepared to do so, except that HSBC has now withdrawn the motion which was the subject of the District Court's remand. [47]

The Court cannot force a party to prosecute a motion when it is unwilling to do so, especially when lifting the automatic stay does nothing more than allow the moving party to proceed with its action in another court. As the District Court noted, quoting the First Circuit Court of Appeals, when considering a request to lift the automatic stay, a bankruptcy court should consider only whether the moving party has a colorable claim to the property at issue. The Bankruptcy Court does not make a "determination of the validity of those claims," in the context of lifting the automatic stay, "but merely [ ] grant[s] permission from the court allowing that creditor to litigate its substantive claims elsewhere." Harris, 2010 WL 3860603 at *4 (quoting Grella, 42 F.3d at 33-34).

---

[47] The Debtor opposed the withdrawal, preferring instead that the Court sanction HSBC for trying to dupe the Court into believing it held the Note and Mortgage and had standing to file the motion in the first instance. But there is nothing, apart from the Debtor's bold assertions, to suggest that HSBC has attempted to perpetrate a fraud on the Court by claiming the right to seek relief from the automatic stay. HSBC may have been the proper party to bring such a motion or it may not. That issue has not been decided by this Court. What the Debtor is really asking the Court to do is issue a type of sanction under Fed. R. Bankr. P. ("Bankruptcy Rule") 9011(c). But inasmuch as the Debtor has not employed the procedures set forth in Bankruptcy Rule 9011(c)(1)(A), and the Court declines to initiate the procedure under Rule 9011(c)(1)(B) (since it has never concluded that HSBC has not had the rights that it has continually asserted), there is no legal justification for sanctioning HSBC.

Furthermore, the Court cannot resist noting that the Debtor has managed to retain the Property without making a mortgage payment for a substantial period of time (which the Court estimates to be nearly four years, three of which are postpetition). When the Court asked the Debtor at the May 19, 2011 hearing whether that benefit should be considered in connection with the Debtor's request for sanctions, the Debtor angrily retorted that the period of time in which he has not made mortgage payments to anyone on the Property is irrelevant. Perhaps . . . perhaps not.

19

### D. The First Adversary Proceeding

The First Dismissal Order entered on April 23, 2009.  A timely motion to reconsider that order was filed.  The order denying reconsideration entered on October 15, 2009.  The deadline for filing an appeal of that order was October 29, 2009.  See Fed. R. Bankr. P. 8002(a).  The Debtor's Second Motion for Reconsideration (filed November 3, 2009), while timely with regard to the October 29, 2009 Stay Relief Order, was *not* timely with regard to the order denying reconsideration of the First Dismissal Order.  Therefore, even if this Court were to take a second look at the November 9 Order with regard to the dismissal of the First Adversary Proceeding, the Court would be compelled to find the request untimely.  If the Debtor wished to further challenge the First Dismissal Order following the Court's denial of the First Motion to Reconsider that dismissal, the Debtor should have filed an appeal.  And even if the Second Motion to Reconsider were timely with regard to the dismissal of the First Adversary Proceeding, it almost certainly would have been denied, as serial requests for reconsideration are improper and do not obviate the obligation to file a timely appeal.

Furthermore, technical aspects aside, even if this Court were to reconsider the First Dismissal Order, the Court would still not have jurisdiction over those claims, as it explained in the October 15 Order and has again above.  In the absence of an impact upon the bankruptcy estate, this Court is jurisdictionally precluded from deciding any contest regarding the validity or holder of the Note or Mortgage in this Chapter 7 case.

Accordingly, the Court rules that, to the extent the Debtor asks the Court to vacate the judgment of dismissal of the First Adversary Proceeding, that request must be denied.

### E. The Second Adversary Proceeding

This Court dismissed the Second Adversary Proceeding on March 12, 2010 and denied reconsideration of that dismissal on March 29, 2010. The Debtor appealed neither order. And, contrary to the Debtor's contentions otherwise, the dismissal of the Second Adversary Proceeding was not contingent upon, nor influenced by, a belief that the then-pending appeal would not succeed. Rather, the Court found that the order dismissing the First Adversary Proceeding was *res judicata* as to the claims raised in the Second Adversary Proceeding. Thus, even if the Debtor had successfully argued on appeal that dismissal of the First Adversary Proceeding should be reconsidered, the Court would still be compelled to reaffirm its dismissal of the Second Adversary Proceeding as duplicative of the First. And nothing in the Debtor's Motion to Vacate Judgment leads the Court to conclude otherwise.[48]

III.    CONCLUSION

This Court has repeatedly explained to the Debtor that, in the context of a Chapter 7 proceeding, the claims he has attempted to raise through his adversary proceedings are claims that must either be brought by the Trustee or litigated by the Debtor in another forum. And the Court has also explained that, absent a motion for relief from the automatic stay, it simply has no jurisdiction in which to reach the issue of standing. The Debtor's fervent demands to have this Court decide the matter are not sufficient to bestow jurisdiction where Congress has not.

---

[48] In fact, the District Court specifically noted, without criticism, that the Second Adversary Proceeding had been dismissed while the appeal was pending and issued no order to reconsider that dismissal or to reopen the Debtor's Second Adversary Proceeding.

Accordingly, the Court will issue Orders in conformity with this Memorandum, respectfully characterizing the Remand Order as moot based on changed circumstances and denying the Debtor's Motion to Vacate Judgment, whether that request is aimed at the First Adversary Proceeding or the Second.


DATED:  June 20, 2011

Henry J. Boroff
United States Bankruptcy Judge